FAX or Internet

## UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of: )
)
)
A purple Motorola mobile phone with a black ) Case No. 22-4229 mb
protective case )
)

### ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer.

An application by a federal law enforcement officer for the government requests the search of the following person or property located in the  District of Arizona
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-2**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B-2**

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     July 14, 2022
 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.  ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
        Camille D. Bibles                                      .
              *(Name)*

☐ I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and Time Issued: _____

**Camille D. Bibles**
Digitally signed by Camille D. Bibles
Date: 2022.06.30 18:35:32 -07'00'
*Judge's Signature*

City and State:  Flagstaff, Arizona          Honorable Camille D. Bibles, U.S. Magistrate Judge
                                              *Printed Name and Title*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:

A purple Motorola mobile phone with a black protective case.

)
)
) Case No. 22-4229 mb
)
)

(Original To Be Filed With Court)

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, F.B.I. Special Agent Brian S. McGrew, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A-2.**

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B-2.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

[X] evidence of a crime;

[X] contraband, fruits of crime, or other items illegally possessed;

[ ] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1111 and 1153 | Murder (Indian Country) |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Emma Mark
Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

_____
*Applicant's Signature*

Brian S. McGrew, F.B.I. Special Agent
*Printed Name and Title*

Sworn by Telephone

Date/Time: _____

Camille D. Bibles   Digitally signed by Camille D. Bibles
Date: 2022.06.30 18:34:57 -07'00'
*Judge's Signature*

City and State:  Flagstaff, Arizona

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

## ELECTRONICALLY SUBMITTED AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Special Agent Brian McGrew, being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine two mobile telephones, described more particularly in **Attachments A1-A2** (hereafter "Subject Mobile Telephone One" and "Subject Mobile Telephone Two"), and to extract the electronically stored information set forth in **Attachments B1-B2**, which represents evidence and/or instrumentalities of criminal violations; specifically, violations of 18 United States Code Sections 1153 and 1111. As more fully detailed below, this case involves the murder of J.R. and E.T., which occurred on the Navajo Nation Indian Reservation in the District of Arizona.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since February of 2005. I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in conducting criminal investigations, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. I am currently assigned to the Flagstaff Resident Agency of the Phoenix Division. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. In the course of my official duties, I am charged with the investigation of crimes occurring on the Navajo Nation Indian Reservation within the District of Arizona. I know the Navajo Nation is a federally recognized tribe based upon my training and experience.

3. The statements contained in this Affidavit are based upon information

derived from your Affiant's personal knowledge, training and experience, information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits, analysis of public records, and analysis of social media information.

4. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## BASIS FOR PROBABLE CAUSE

5. On June 2, 2022, Navajo Department of Criminal Investigation (NDCI) Criminal Investigator (CI) Alejandro Dayea advised your Affiant of the murder of J.R. and her uncle, E.T. I drove to the scene in Birdsprings, Arizona where I assisted CI Dayea, NDCI CI Rosalyn Benally, and NDCI CI Donald Seimy with the collection of evidence and witness interviews.

6. J.R. and E.T. were found dead in J.R.'s living room on the morning of June 2, 2022 by J.R.'s minor son, Z.R. Each victim sustained a single gunshot wound. We collected three .223 caliber cartridges outside of the residence and two expended .223 caliber cartridge casings inside the residence. We also collected Subject Mobile Telephone One from the residence's living room. I discovered and collected three plastic baggies containing a white crystalline substance and a purple and blue pipe from under E.T.'s body. We also collected a pink plastic container containing a green leafy residue in the living room, and a broken glass smoking pipe in the kitchen. We observed the Subject Laptop Computer in the kitchen adjacent to the broken glass smoking pipe. CI Benally photographed the Subject Laptop Computer but did not collect it at the time.

7. CI Benally and I interviewed D.B. outside of the residence after completing the collection of evidence. During the interview D.B. provided CI Benally with Subject Mobile Telephone Two. D.B. stated the telephone belonged to J.R.'s, minor son, Z.R.

According to D.B., Subject Mobile Telephone Two belonged to J.R., and Subject Mobile Telephone One was the telephone J.R. provided to her son, Z.R. for his use. J.R. had access to both subject mobile telephones using a common password and used them both regularly. J.R. frequently took possession of Subject Mobile Telephone One in order to use it and review its contents.

8. I interviewed J.M., J.R.'s brother, and his wife, D.M. on June 2, 2022. J.M. and D.M. stated J.R. was selling illicit drugs and associated with several individuals who also sold illicit drugs.

9. Z.R. provided two spiral notebooks to J.M., who then gave your Affiant the notebooks on June 2, 2022. I reviewed the notebooks and found pages containing names with dollar amounts annotated next to the names as well as phone numbers and associated email addresses.

10. On June 6, 2022, J.M. provided your Affiant with the Subject Laptop Computer. J.M. attempted to log onto the Subject Laptop Computer after he found it in J.R.'s kitchen on June 3, 2022. J.M. discovered the Subject Laptop Computer's logon prompt was for a user named "Jesethiwon Smith" (hereafter Smith). J.M. stated he had heard a rumor that an unknown man met with Smith near Winslow, Arizona and claimed Smith killed J.R.

11. Your Affiant interviewed M.T. on June 30, 2022. M.T. confirmed meeting an unknown man near Winslow, Arizona on June 5, 2022. The man, who did not identify himself to M.T., claimed Smith was involved in J.R.'s murder. However, the unknown man did not elaborate further on how Smith was involved.

12. Subject Mobile Telephone One, Subject Mobile Telephone Two, and Subject Laptop Computer are currently in the lawful possession of the FBI. Subject Mobile Telephone One was collected at the scene of the murder during the execution of a consent to search of the residence. Subject Mobile Telephone Two was received from D.B. after

J.R.'s son, Z.R., provided the telephone to her. Z.R.'s legal guardian later signed a receipt for the telephone and confirmed the FBI could retain the telephone until it was searched. J.M. provided the Subject Laptop Computer to your Affiant after finding it in J.R.'s kitchen and realizing it likely belonged to another person.

13. Subject Mobile Telephone One, Subject Mobile Telephone Two, and Subject Laptop Computer are currently in storage at the FBI's Flagstaff Resident Agency in Flagstaff, Arizona. In my training and experience, I know these devices are stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same condition as they were when they first came into the possession of the FBI.

## ITEMS TO BE SEIZED

14. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the evidence and items listed in **Attachments B1-B2** will be found in the contents of Subject Mobile Telephone One and Subject Mobile Telephone Two.

15. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by other witnesses, your Affiant knows the following:

a. Drug traffickers commonly use mobile telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities. Therefore, evidence related to drug trafficking activity is likely to be found on Subject Mobile Telephone One and Subject Mobile Telephone Two.

4

b.  Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities. Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on Subject Mobile Telephone One and Subject Mobile Telephone Two.

c.  Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Moreover, drug traffickers commonly take photographs of their firearms. Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on Subject Mobile Telephone One and Subject Mobile Telephone Two.

## DIGITAL EVIDENCE STORED WITHIN A MOBILE DEVICE

16.  As described in **Attachments B1-B2**, this application seeks permission to search for records and information that might be found in the contents of Subject Mobile Telephone One and Subject Mobile Telephone Two. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

17.  *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the Subject Mobile Telephone One and Subject Mobile Telephone Two for at least the following reasons:

a.  Your Affiant knows that when an individual uses a mobile device, the mobile device may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The mobile device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The mobile device is also likely to be a storage medium for evidence of crime. From my training and

experience, your Affiant believes that a mobile device used to commit a crime of this type may contain: data that is evidence of how the mobile device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b. Based on your Affiant's training and experience, your Affiant knows that cellular phones are one of the primary modes of communication on the Navajo Nation Indian Reservation. Cellular phones are used to call and text others, as well as to access the Internet. Cellular phones contain information that may show a person's movement, location, calls, texts, and related information, as well as the times those things occurred. Thus, they can be used to determine or help determine a person's movement prior to a crime and possibly assist in determining the time of an incident and/or time of death.

c. Based on my knowledge, training, and experience, your Affiant knows that mobile devices contain electronically stored data, including, but not limited to, records related to communications made to or from the mobile device, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

d. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a mobile device, deleted, or viewed via the Internet. Electronic files downloaded to a mobile device can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a mobile device, the

6

data contained in the file does not actually disappear; rather, that data remains on the mobile device until it is overwritten by new data.

   e. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the mobile device that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a mobile device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   18. *Forensic evidence.* As further described in **Attachments B1-B2**, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the mobile device was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the Subject Mobile Telephone One and Subject Mobile Telephone Two because:

   a. Data in a mobile device such as a telephone can provide evidence of a file that was once in the contents of the mobile device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. As explained herein, information stored within a mobile device may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the mobile device. This "user

7

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the mobile device was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a mobile device can indicate how and when the mobile device was accessed or used. For example, as described herein, mobile devices can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the mobile device, and the IP addresses through which the mobile device accessed networks and the internet. Such information allows investigators to understand the chronological context of mobile device access, use, and events relating to the crime under investigation. Additionally, some information stored within a mobile device may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a mobile device may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the mobile device. Last, information stored within a mobile device may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

    c.  A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the mobile device was used, the purpose of its use, who used it, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a mobile device that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, mobile device evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one mobile device is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a mobile device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

19. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20. This Affidavit was sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose.

21. Based on the foregoing, I request that the Court issue the proposed search warrants because there is probable cause to believe that violations of federal law have occurred. Your Affiant submits there is probable cause to believe that the items listed in **Attachments B1-B2**, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. §§ 1153 and 1111 (Murder in Indian Country) are likely to be found in the

9

contents of Subject Mobile Telephone One and Subject Mobile Telephone Two, further described in **Attachments A1-A2**.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

_____
Special Agent Brian Scott McGrew
Federal Bureau of Investigation

Telephonically subscribed and sworn to before me this __30th__ day of __June__, 2022.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.06.30 18:34:28 -07'00'

Honorable Camille D. Bibles
United States Magistrate Judge

10

## ATTACHMENT A-2 – PROPERTY TO BE SEARCHED

Subject Mobile Telephone Two is a purple Motorola mobile telephone with a black protective case. The model, serial number, and IMIE number are not displayed on the telephone's exterior and are currently inaccessible in the telephone's data storage.



## ATTACHMENT B-2 – PROPERTY TO BE SEIZED

Any records and information found within the digital contents of SUBJECT MOBILE TELEPHONE TWO that relate to violations of 18 USC §§ 1153 and 1111, including:

    a. Content of all text message communications, including deleted messages;

    b. Local and long-distance telephone connection records;

    c. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    d. All records and other information relating to wire and electronic communications sent or received by the SUBJECT MOBILE TELEPHONE TWO, including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), SMS detail, email addresses, and IP addresses);

        ii. information regarding the cell towers and sectors through which the communications were sent and received.

    e. evidence of who used or controlled the SUBJECT MOBILE TELEPHONE TWO at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    f. evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

  g. evidence indicating the cellular telephone user's state of mind as it relates to the crimes under investigation;

  h. evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

  i. passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone; and

  j. contextual information necessary to understand the above evidence.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.